IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

Plaintiff,

vs.                                                                          No. CR 01-155 MV

ERNESTO OLIVAS-MERAZ

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion to Suppress Evidence,

filed March 16, 2001 **[Doc. No. 15]**.  A hearing was held on this matter on June 6, 2001.  The

Court, having considered the motion, response, testimony, evidence and argument presented at

the hearing, finds that the motion is not well taken and will be **denied.**

## FACTUAL BACKGROUND

On Thursday, November 2, 2000, at approximately 2:00pm, a 1985 blue Chevrolet pickup

driven by defendant Olivas and occupied by Gisela Felix-Quintana entered the US Border Patrol

Checkpoint on Highway 70 near Alamogordo, New Mexico. During the primary inspection, US

Border Patrol Agent Collier asked Olivas and Felix if they were US citizens.  Olivas presented a

valid resident alien card and Felix presented a border crossing card and a valid travel document.

Collier then asked Olivas about his destination.  Olivas stated that they were traveling to

Ruidoso to pick up a truck that belonged to him.  Collier asked where the truck was, and Olivas

stated that it was somewhere around the racetrack.  Collier then noticed that the truck displayed a

new license plate, so he asked Olivas how long he owned the truck.  Olivas stated approximately

two years.

Collier then requested registration for the truck.  When Olivas handed him the registration, Agent Collier noticed that Olivas' hand was shaking.  Agent Collier noted that the truck was registered to Olivas on August 25, 2000, only two months prior.  In addition, the Agent noticed that there were only two keys on the truck's key ring.

Based upon these observations, Agent Collier asked for and received consent from Olivas to inspect the truck with his service canine.  As Agent Collier went to retrieve his dog, he ran a 72-hour lane check on the truck.  It came up that the truck had crossed the Bridge of the Americas in El Paso two hours earlier.  Agent Collier then asked Olivas if he crossed the border on November 2.  Olivas stated that he did not.  Collier then asked if any other persons had used the truck to cross the border; Olivas stated that no one else other than he had used the truck.

Agent Collier proceeded with the canine search.  The dog alerted to the left front tire of the truck.  A subsequent search of the truck resulted in the discovery of metal cylinders welded to all six tire rims on the truck.  240 pounds of marijuana was later discovered in the cylinders.

The stop lasted approximately ten minutes.

## DISCUSSION

"During a routine fixed-checkpoint stop, border patrol agents may question individuals in the absence of individualized suspicion about their citizenship and immigration status and request documentation."  *United States v. Massie*, 65 F.3d 843, 847-48 (10th Cir. 1995).  Further, "[a]gents may briefly question individuals concerning such things as vehicle ownership, cargo, destination, and travel plans, as long as such questions are reasonably related to the agent's duty to prevent the unauthorized entry of individuals into this country and to prevent the smuggling of contraband."  *Id.* at 848 (citation and quotation omitted).  Moreover, border patrol agents at a

fixed-checkpoint stop are not limited to inquiring into suspicious circumstances related only to the

initial reason for the stop or referral to the secondary area.  *Id.* (citing *United States v. Gonzalez-*

*Acosta*, 989 F.2d 384, 387-88 (10th Cir. 1993); *United States v. Espinoza*, 782 F.2d 888, 891

(10th Cir. 1986); *United States v. Lopez*, 777 F.2d 543, 547 (10th Cir. 1985)).  However, agents

do not have unlimited discretion at fixed checkpoints.  The stop must remain brief, unobtrusive,

and must not exceed the scope of a permissible routine checkpoint stop.  *See United States v.*

*Rascon-Ortiz*, 994 F.2d 749, 752 (10th Cir. 1993).  Whether the questioning takes place in the

primary or secondary inspection area does not affect the constitutional inquiry.  "Border patrol

agents have virtually unlimited discretion to refer cars to the secondary inspection area ... and may

do so in the absence of individualized suspicion."  *Id.* at 847 (citations and quotations omitted).

Additionally, "if an agent observes 'suspicious circumstances' during the initial

questioning, he 'may briefly question the motorist concerning those suspicions and ask the

motorist to explain.'"  *Massie*, 65 F.3d at 848 (citing *Rascon-Ortiz*, 994 F.2d at 753).  A

"suspicious circumstance" is not the same as reasonable suspicion.  *Id.*  Border patrol agents do

not have to have reasonable suspicion to continue to detain and question individuals at a fixed

checkpoint.  *Id.*

The dog sniff established probable cause for the search of the containers that ultimately

revealed the marijuana.  In order for the dog sniff to be within the bounds of the Fourth

Amendment, it must have occurred while Olivas was lawfully detained or pursuant to a valid

consent.  *See United States v. Chavira*, 9 F.3d 888, 889-90 and n.1 (10th Cir. 1993); *see also*

*United States v. Sukiz-Grado*, 22 F.3d 1006, 1008-1009 (10th Cir. 1994).  In order for the Court

to find that Olivas was lawfully detained, it must find that there were sufficient suspicious

circumstances to justify detention or that the continued questioning related to the scope of a

permissible routine checkpoint stop.  *See Rascon-Ortiz*, 994 F.2d at 752-53.  Therefore, the

question remains whether there was a continued detention, and if so, whether there were

suspicious circumstances that justified continued detention.

The Court finds that there was not a continued detention in this case; Agent Collier asked

questions that were within the permissible scope of the stop.  Agent Collier asked about travel

plans, asked for documentation, and inquired as to when they crossed the border.  *See Massie*, 65

F.3d at 849.  Inquiring about ownership of the vehicle was permissible.  *See United States v.*

*Ludlow*, 992 F.2d 260, 265, n.4 (10th Cir. 1993).  The Agent also made a cursory inspection of

the vehicle (noting the new license plate), which is permissible.  *See Massie*, 65 F.3d at 848 (citing

*Rascon-Ortiz*, 994 F.2d at 752).  Therefore, the questioning was within the permissible scope.

The Court also finds that the stop was brief and unintrusive, as it lasted approximately ten

minutes.

During the lawful detention, Mr. Olivas consented to a canine search of his vehicle.

Therefore, the canine search was valid.  *See Ludlow*, 992 F.2d at 264; *see also Chavira*, 9 F.3d at

890, n.1.  Mr. Olivas does not dispute that he gave consent, or that it was involuntary.  At the

hearing he conceded that his consent justified the continued detention at the checkpoint.  The dog

alerted to the left front tire.  When the dog alerted, the Agent had probable cause to conduct a

search.  *See Chavira*, 9 F.3d at 890 (citing *United States v. Morales-Zamora*, 914 F.2d 200, 205

(10th Cir. 1990)).  The Officer therefore properly continued to search the left front tire when he

let the air out, noted that the rim did not touch the ground, and searched the metal canisters.

During that proper search he discovered the marijuana that is the subject of this indictment.

Therefore, the Court finds that the Agent's actions were proper and within the bounds of the

Fourth Amendment.

## CONCLUSION

Because the Agent's questions were within the permissible scope of the fixed checkpoint

stop, it was brief and unintrusive, and the consent to search came while Mr. Olivas was lawfully

detained, no Fourth Amendment violation occurred in this case.

**IT IS HEREBY ORDERED** that Mr. Olivas' Motion to Suppress Evidence, **[Doc. No.**

**15]** is **denied**.

Dated this 12th day of June, 2001.


_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE


Attorney for Government
Michelle Wykoff

Attorney for Defendant
Robert Ramos